MICHAEL J. HADDAD (State Bar No. 189114)
JULIA SHERWIN (State Bar No. 189268)
TERESA ALLEN (State Bar No. 264865)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, CA 94612
Telephone:   (510) 452-5500
Facsimile:    (510) 452-5510

Attorneys for Plaintiff I.F.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.F., by and through her guardian ad litem SHASTA SKINNER, individually and as successor-in-interest to Decedent RONELL FOSTER; R.F., by and through his guardian ad litem SHENA BATTEN, individually and as successor-in-interest to Decedent RONELL FOSTER; PAULA MCGOWAN, individually; and RONELL FOSTER, SR., individually.<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF VALLEJO, a municipal corporation; RYAN MCMAHON, individually and in his official capacity as a Police Officer for the CITY OF VALLEJO; and DOES 1-50, inclusive.<br><br>Defendants. | CAND No: 20-mc-80075-LB<br>CAED No: 2:18-cv-00673-JAM-CKD<br><br>**PLAINTIFF I.F.'S UNOPPOSED MOTION TO APPROVE MINOR'S COMPROMISE** |

**Introduction**

This motion, filed pursuant to Civ. L.R. 7-1 and by stipulation of the parties and order of the

Court, to be heard by the Honorable United States Magistrate Judge Laurel Beeler, arises out of the

parties' agreement to settle this wrongful death civil rights case. This motion to approve minor's compromise is for Plaintiff I.F. only.

This motion comes after extensive negotiations and a daylong settlement conference with this Court, culminating in a settlement agreement between the parties that the City of Vallejo Board of Supervisors and its risk management boards approved on September 3, 2020. Defendants' counsel has informed Plaintiff I.F.'s counsel that Defendants do not oppose this motion.

### Plaintiff I.F.'s Summary of Facts

On February 13, 2018, at approximately 7:40 p.m., Decedent Ronell Foster was riding his bike in downtown Vallejo when Defendant Vallejo Police Department ("VPD") Officer Ryan McMahon, riding alone in his patrol car, initiated a traffic stop of Mr. Foster for "riding in and out of traffic on his bike" and for not having a light on his bicycle. Officer McMahon had not planned to arrest Mr. Foster, but only give him a warning and educate him about bicycle safety, as Mr. Foster had only committed traffic infractions.

What started out as a minor traffic stop quickly escalated into a vehicle pursuit and then foot chase as Mr. Foster fled from Officer McMahon. As Mr. Foster ran away, Defendant McMahon claimed that Mr. Foster appeared to be concealing a gun in his waistband. Without radioing dispatch that he was engaged in a foot pursuit based a minor misdemeanor, of a suspect he believed to be armed, without turning on his body camera, without providing dispatch his location and direction of travel, without ever giving dispatch a description of Mr. Foster, and without any back up, Defendant McMahon chased after Mr. Foster and Tased him in the back. Mr. Foster continued to run down a narrow alleyway until he fell down. As Mr. Foster started to get up, Defendant McMahon pushed him down a short flight of stairs, straddled Mr. Foster's back and continued Tasing him, then began striking Mr. Foster with his flashlight, including in the head. When Officer McMahon raised the flashlight in the air to strike Mr. Foster again, Mr. Foster defended himself by grabbing ahold of the

flashlight as it came toward him. Mr. Foster, still on the ground, rolled away from Officer McMahon, dropped the flashlight, and started to get up to run away. Officer McMahon's body camera video shows, and the forensic evidence confirms, that Mr. Foster was several feet away from Officer McMahon, turning and running away, when Officer McMahon shot Mr. Foster seven times in his side, back, and back of his head. Mr. Foster was pronounced dead at the scene. Mr. Foster was unarmed and never posed an immediate threat of death or serious bodily injury to Officer McMahon, at any time, and deadly force was never justified.

Defendants defended this case aggressively. Defendants asserted that Mr. Foster's non-compliance with Officer McMahon's multiple demands to stop running and resisting, his grabbing of the flashlight from Officer McMahon, and Mr. Foster's alleged "bladed stance" and motion toward Officer McMahon with the flashlight placed Officer McMahon in immediate danger of death or serious bodily injury. Defendants claimed Officer McMahon was left with no alternative but to use deadly force.

It is undisputed that Mr. Foster and his family enjoyed deeply loving and supportive relationships. Mr. Foster's daughter, I.F., was only five years old at the time of Mr. Foster's death, and had a close and loving relationship with her father, who was an engaged and adoring parent.

**Procedural Background and Settlement**

Plaintiffs filed the complaint in this matter on March 27, 2018. The case was scheduled for trial on December 7, 2020. Plaintiff I.F. is represented by Michael J. Haddad and Julia Sherwin of the Oakland, California, civil rights law firm Haddad & Sherwin LLP, along with their associate, Teresa Allen. Plaintiff's counsel did not become concerned in this matter at the instance of Defendants, and counsel have not received, and do not expect to receive, any compensation for counsel's services from any person other than Plaintiff I.F., via the agreed-upon payment by Defendants of the settlement amount.

Haddad & Sherwin LLP conducted extensive discovery in this case, and the case settled at an advanced stage of litigation. Plaintiff I.F.'s counsel deposed the following witnesses:

• Defendant Vallejo Police Department (VPD) Officer Ryan McMahon; former Vallejo Police Chief Joseph Allio; current VPD Chief Shawny Williams; Captain Joseph Iacono; Sergeant Steve Darden; VPD officers Jason Bahou, David McLaughlin, Ryan McLaughlin, Amanda Schwartz, and Amanda Blain; witness Robert Wolfe; and Defendant City of Vallejo's Person Most Knowledgeable regarding the status, investigation, findings, recommendations, approvals, and disposition of any and all administrative and/or Internal Affairs investigations concerning, or connected with, the Ronell Foster incident on February 13, 2018, including but not limited to Defendant Ryan McMahon's conduct before the shooting.

Plaintiff I.F.'s counsel also attended and/or defended the Defendants' depositions of Plaintiff I.F's. mother and Next Friend, Shasta Skinner; Plaintiff R.F.'s mother and Next Friend, Shena Batten; and Ronell Foster's parents, Plaintiffs Paula McGowan and Ronell Foster, Sr.

Plaintiff's counsel also engaged in extensive and voluminous written discovery, and worked closely with experts, including disclosed expert forensic pathologist Bennet Omalu M.D., and police practices expert Jack Ryan. Dr. Omalu examined Mr. Foster's tissue at the Solano County Coroner's office. Plaintiff's counsel also worked extensively with a trial consultant, addiction psychiatrist, and toxicologist to prepare for deposing Defendants' experts and for trial.

The parties had exchanged expert reports and scheduled expert depositions, and Plaintiff's counsel had completed extensive background investigations of Defendants' disclosed experts in preparation for deposing them. Plaintiff's counsel were working on the opposition to Defendants' motion for summary judgment at the time this case settled.

United States Magistrate Judge Laurel Beeler conducted a lengthy settlement conference on July 21, 2020, issuing a mediator's proposal with extended deadlines, which the parties eventually

accepted. The parties agreed to settle this matter for a total of $5,700,000, with each of Ronell Foster's parents receiving 7.5% of the settlement and each of Mr. Foster's two children receiving 42.5% of the settlement. The monetary breakdown is as follows:

- $427,500.00 for Plaintiff Paula McGowan;
- $427,500.00 for Plaintiff Ronell Foster Sr.;
- $2,422,500.00 for Plaintiff I.F., with the remainder after payment of attorneys' fees and costs to be put into a structured settlement for her benefit;
- $2,422,500.00 for Plaintiff R.F.., with the remainder after payment of attorneys' fees and costs to be put into a structured settlement for his benefit.

Although Plaintiff I.F. would legally be entitled to the entirety of her settlement proceeds upon reaching the age of majority, her mother and Next Friend, Shasta Skinner, and her counsel believe a structured settlement with tax-free payments over time would be in her best interests. The parties have agreed to settle I.F.'s claim for a structured settlement annuity with a present value of $1,779,647.56. These payments are to be made on account of personal injury or sickness pursuant to Section 104(a)(2) of the Internal Revenue Code of 1986 (as amended), and accordingly are tax-exempt. The annuity will provide a combination of annual and periodic payments to I.F., summarized as follows:

- $25,000 on her 18th birthday, which could be used to buy a car;
- $1,712.13 paid monthly for life beginning on her 18th birthday, guaranteed for 40 years. Payments will increase 2% annually. Payments will continue monthly for the rest of her life, and if she dies prematurely the guaranteed payments will continue to her beneficiary until May 12, 2070;
- $40,000 twice a year ($80,000 per year) beginning the summer after she reaches the age of 18, guaranteed for four years, which she can use to help pay for college;

- $50,000 twice a year ($100,000 per year) beginning the summer after she graduates college, guaranteed for two years, which she can use to help pay for graduate school;

- $10,000 paid annually for seven years beginning on her 18th birthday, which could be used for travel during breaks from college or graduate school, or to invest if she chooses;

- $1,500 annually for life, beginning on her 19th birthday, guaranteed for 40 years. Payments will increase 2% annually. Payments will continue annually for the rest of her life, and if she dies prematurely the guaranteed payments will continue to her beneficiary until June 12, 2070;

- $50,000 on I.F.'s 22nd birthday;

- $100,000.00 on I.F.'s 25th birthday;

- $150,000.00 on I.F.'s 28th birthday;

- $325,000.00 on I.F.'s 30th birthday.

The total tax-free guaranteed benefits paid are $2,571,595.54. The total tax-free expected payments for life are $3,895,421.04. (Sherwin Decl. **Exhibits A** and **B**).

Plaintiff I.F's counsel agreed to reduce their civil rights attorneys' fees and costs in order to settle this matter for the benefit of Plaintiff I.F. In addition, Plaintiff I.F.'s counsel forwarded $52,477.44 in case costs during the course of the litigation. (**Exhibit C**). Plaintiffs agreed to split the cost of disclosed experts Omalu and Ryan, which allowed Plaintiff I.F. to be reimbursed $15,250 in expert fees by the other Plaintiffs, thus reducing Plaintiff I.F.'s total case costs to $37,227.44.

In finalizing this motion, Plaintiff's counsel noticed a charge of $43.68 on the case costs ledger for a meal with I.F.'s mother during the settlement conference. Plaintiff's counsel do not charge clients for such meals, and this charge was incorrectly added to the case costs ledger. Plaintiff's counsel also noticed the trial consultant's fees, which are typically substantial, are not on the ledger. Plaintiff's counsel's office manager is on vacation, and the structured settlements must fund by September 30, 2020, so there is not time to correct these errors. Plaintiff's counsel therefore waive

reimbursement of the trial consultant's fees. They also ask the Court to order them to pay $43.68 to Shasta Skinner, with instructions that Ms. Skinner shall only use the funds for I.F.'s benefit, which will remove this cost from I.F.'s case costs and allow the structured settlement to fund on time.

To resolve this matter without Plaintiff I.F. having to bear the risk of trial, Plaintiff I.F.'s counsel have agreed to reduce their civil rights attorneys' fees to 25%. A reduced 25% fee is $605,625.00.

The reduced attorneys' fees and costs are reasonable not only under federal law, but also under state law governing minors' compromises. Under California Rule of Court 7.955(b), amended in 2007 to provide for a "reasonable fee" for attorneys representing a minor, the court may consider the following nonexclusive factors, which also weigh in favor of granting Plaintiff I.F.'s attorneys' fees and costs here:

(1) **The fact that a minor is involved and the circumstances of the minor:** I.F. is a minor and is represented in this matter by her mother, Shasta Skinner. I.F. lives with her mother, Ms. Skinner, who is her primary caregiver. Ms. Skinner has consistently shown that she has her daughter's best interests in mind, and has done everything necessary for the successful pursuit of this case. Ms. Skinner has agreed to the terms of this negotiated settlement, including the reduced amount of fees to her daughter's counsel requested herein. (*See,* Declaration of Shasta Skinner filed herewith).

(2) **The amount of the fee in proportion to the value of the services performed:** The amount of the combined attorneys' fees and costs of $642,852.44 ($605,625 fees and $37,227.44 costs) is significantly less than other civil rights cases handled by Plaintiff's counsel. Plaintiff I.F.'s counsel worked several hundred hours on this matter on a contingent basis, and advanced over $52,000.00 in case costs (with no interest charged). The services performed by I.F.'s counsel yielded an excellent result for all Plaintiffs.

(3) **The novelty and difficulty of the questions involved and the skill required to perform the legal services properly:** This case involved difficult issues concerning law enforcement liability for a police shooting, federal constitutional law, qualified immunity, municipal liability, forensic pathology, and law enforcement standards surrounding the excessive use of force. Haddad & Sherwin LLP concentrate their practice in the complex and difficult area of civil rights and wrongful death law.

(4) **The amount involved and the results obtained:** Plaintiffs obtained an outstanding result in this case, including a present value damages settlement of $5,700,000.00. I.F.'s structured settlement will provide her with annual and periodic payments that will help pay for college and graduate school, buy her a car, help pay for the down payment on a home, and provide her with lifetime financial security through guaranteed periodic payments for life. I.F.'s guaranteed tax-free benefits from this settlement total $2,571,595.54 and her projected benefits given her actuarial life expectancy total $3,895,421.04.

(5) **The time limitations or constraints imposed by the representation:** Plaintiff I.F.'s counsel had four attorneys and three paralegals devoting several hundred hours to this matter to date, in order to litigate and prepare this case through discovery, expert disclosures, and eventual trial before the case settled. Plaintiff I.F's counsel's law firm, Haddad & Sherwin LLP, is a small firm with a dedicated civil rights practice. The firm takes a limited number of cases so that both partners can devote the time necessary to pursue the case successfully and maximize the results for their clients. Pursuing this matter required Plaintiff I.F.'s counsel to turn away other cases, and to postpone work on cases currently in their caseload, in order to pursue Plaintiff I.F.'s claims in this matter and prepare this case for a maximal settlement result if settlement were possible, and

eventual trial in the event the case did not settle.

**(6) The nature and length of the professional relationship:** Plaintiff I.F.'s counsel were retained in this matter on March 22, 2018, and have worked on this matter for two and a half years. Plaintiff I.F.'s counsel met and spoke on the telephone or by email extensively with Plaintiff I.F.'s mother, Ms. Skinner, to help her understand the legal process, provide her regular updates, help her prepare for her deposition, work with a trial consultant, prepare her for the settlement conference, and advise her about structured settlement options for her daughter.

**(7) The experience, reputation, and ability of the attorney or attorneys performing the legal services:** Haddad & Sherwin LLP are experienced and nationally prominent civil rights lawyers. Michael Haddad is the past President, and longstanding Board of Directors member, of the National Police Accountability Project (NPAP)(www.npapjustice.org), a national organization of approximately 600 civil rights lawyers and legal workers dedicated to ending police abuse and misconduct, and has been handling civil rights police misconduct cases for twenty-nine years. Julia Sherwin is a former longtime Vice President and Board member of NPAP, Past President of the Alameda Contra Costa Trial Lawyers Association, former Board member of the Consumer Attorneys of California, and is a former Lawyer Representative to the Northern District Judicial Conference and the 9th Circuit Judicial Conference. She has been handling civil rights cases for twenty-five years. Further information about Plaintiff I.F.'s counsel can be found in the Declaration of Julia Sherwin and on the website https://haddadandsherwin.com/. Teresa Allen holds an LLM from George Washington University, and worked for several years on disabled access and wage and hour cases before joining the firm.

(8) **The time and labor required:**  This case required extensive work by Plaintiff I.F.'s counsel, including four attorneys and three paralegals devoting several hundred hours to bring this case to a successful outcome.

(9) **The informed consent of the minor's representative to the fee:**  Plaintiff I.F.'s mother, Ms. Skinner, has been informed and agrees to the settlement for her daughter in the present value structured settlement investment amount of $1,779,647.56, with civil rights attorneys' fees and costs to be repaid to Haddad & Sherwin LLP, in the amount of $642,852.44 for Plaintiff I.F., along with a check for $43.68 to her for I.F.'s benefit.  She understands and agrees that Plaintiff I.F.'s counsel have reduced their attorneys' fees in order to obtain a settlement for Plaintiff I.F., and she agrees that this arrangement is in Plaintiff I.F.'s best interests.

(10) **The relative sophistication of the minor's representative:**  Shasta Skinner is an intelligent woman and helps to create a stable home for I.F., given her father's untimely death.  Ms. Skinner is dedicated to I.F.'s wellbeing and believes the structured settlement is in her best interests.  She also believes the structured settlement is a way for Ronell Foster to help his children and provide them with some financial security throughout their lives, and for the children to honor their Dad.  (Shasta Skinner Declaration, ¶14).

(11) **The likelihood, apparent to the minor's representative at the time the agreement was made, that the attorney's representation would preclude other employment:**  At the time Plaintiff I.F.'s counsel were retained, they explained that they take a limited number of cases so that both partners can devote the time necessary to maximize the results for their clients, which requires them to turn away a lot of cases.

(12) **Whether the fee is fixed, hourly or contingent:**  The fees are contingent civil rights attorneys' fees, and Plaintiff I.F.'s counsel risked being paid nothing for work over the

last two and a half years, while also forwarding more than $52,000.00 in case costs, interest-free.

**(13) If the fee is contingent, (A) the risk of loss borne by the attorney; (B) the amount of costs advanced by the attorney; and (C) the delay in payment of fees and reimbursement of costs paid by the attorney:** Plaintiff I.F.'s counsel bore the complete risk of loss in this case. If a successful verdict or settlement had not been reached, Plaintiff I.F.'s counsel would not have been paid for any of their work, and they would not have been reimbursed any of the case costs that they have forwarded. Plaintiff I.F.'s counsel have been paid nothing for their work, or as reimbursement of the remaining costs advanced, in the two and a half years that they have worked on this case.

**(14) Statutory requirements for representation agreements applicable to particular cases or claims:** There are no statutory requirements for the representation.

Cal. Rule of Court 7.955(b).[1]

Plaintiff I.F. respectfully submits that the foregoing settlement is appropriate and in the best interests of I.F. The payment stream will provide a significant monetary foundation to assist I.F. in paying for her education, housing expenses, and other primary financial needs throughout the course of her adult life, with guaranteed payments of $2,571,595.54 and projected payments of $3,895,421.04.

Plaintiff I.F. requests that this Court decide this matter on an expedited basis without a hearing, as the insurance companies for Plaintiff I.F's structured settlement annuities, Metropolitan Tower Life Insurance Company, USAA Life Insurance Company, Berkshire Hathaway Life Insurance

---

[1] The Advisory Committee Comment to the Rule states: "The rule permits, but does not require, the court to allow attorney's fees in an amount specified in a contingency fee agreement." Plaintiff I.F.'s retainer agreement provides for an attorney's fee of 40% of the total recovery before repayment of case costs, or civil rights attorneys' fees, whichever is greater, subject to court approval for minors.

Company of Nebraska, and Prudential Insurance Company of America have already provided firm amounts for I.F.'s structured settlement payments, which must be funded on or before September 30, 2020. Plaintiff I.F. requests that the Court order Defendants to complete all necessary documents and fund the structured settlement annuities by September 30, 2020, as required.

Plaintiff I.F.'s counsel also request that this Court order Defendants to provide either a check or wire transfer for the remaining $642,852.44 in settlement proceeds that are not being structured, made payable to "Haddad & Sherwin LLP Client Trust Account f/b/o I.F." [using her real name], with any check to arrive at the offices of Haddad & Sherwin LLP, or any wire transfer to arrive in their Client Trust Account, no later than fifteen days from this Court's Order.

## Conclusion

This action spanned the course of more than two years. It involved numerous depositions, thousands of pages of documents, a substantial amount of time and resources devoted to expert witnesses, and required Plaintiff I.F.'s counsel to forward more than $52,000.00 in case costs while foregoing other work to pursue this case successfully. In light of these factors, Plaintiff I.F. submits that the amount of the settlement and the attorneys' fees and costs sought are reasonable and appropriate.

For the foregoing reasons, Plaintiff I.F. respectfully request that this Court approve the compromise of Plaintiff I.F's claims and order the timely payments set forth herein.

DATED: September 4, 2020                               HADDAD & SHERWIN LLP

                                                       /s/ Julia Sherwin
                                                       Julia Sherwin
                                                       Attorneys for Plaintiff I.F.